DEPARTMENT OF THE CORPORATION COUNSEL  205

MOANA M. LUTEY                    6385
Corporation Counsel
KEOLA R. WHITTAKER               11200
RICHELLE K. KAWASAKI             6400
Deputies Corporation Counsel
County of Maui
200 S. High Street
Wailuku, Hawaii 96793
Telephone No. (808) 270-7741
Facsimile No. (808) 270-7152
Email: Keola.R.Whittaker@co.maui.hi.us
Email: Richelle.Kawasaki@co.maui.hi.us

Attorneys for Defendant
COUNTY OF MAUI

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In Re:<br><br>GRAY MEDIA GROUP, INC., D/B/A KGMB/KHNL and LYNN KAWANO | Case No.: CV 22-mc-000592 LEK-RT<br><br>DEFENDANT COUNTY OF MAUI'S MEMORANDUM IN OPPOSITION TO NON-PARTY GRAY MEDIA GROUP INC., D/B/A KGMB/KHNL AND LYNN KAWANO'S MOTION FOR PROTECTIVE ORDER AND/OR TO QUASH SUBPOENA; DECLARATION OF KEOLA R. WHITTAKER; EXHIBITS "1" – "9"; CERTIFICATE OF SERVICE<br><br><br><br>Hearing:<br>Date:    January 5, 2023<br>Time:   10:00 a.m.<br>Judge:  Hon. Leslie E. Kobayashi |

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     RELEVANT BACKGROUND ...........................................................3

   A.   The Golden Ticket Scheme ...........................................................3

   B.   Constantino No Longer Has Key Pieces of Evidence..................6

   C.   Kawano Becomes Part of the Golden Ticket Scheme..................8

   D.   Kawano's Attorneys Reject Offers to Negotiate the
       Timing and Scope of the Subpoena ...........................................10

III.    LEGAL STANDARD.......................................................................10

IV.     ARGUMENT ...................................................................................12

   A.   Kawano Waived Any Privilege by Providing
       Information to Green and the FBI................................................12

   B.   The Qualified Journalist's Privilege to Non-Confidential
       Information is Easily Overcome. .................................................15

     1.   The County has Exhausted all Reasonable
         Alternative Sources ...............................................................16

     2.   The Information Sought is not Cumulative..............................17

     3.   The Information Sought is Unquestionably
         Relevant to the County's Defenses and Plaintiffs' Claims.....17

       a.   The Information is Relevant to the County's
          "Failure to Mitigate" Affirmative Defense...........................17

       b.   The Information is Relevant to the County's
          "Statute of Limitations" Affirmative Defense......................18

       c.   The Information is Relevant to Constantino's
          Claim for Damages...............................................................18

d.    The Information is Required for the County's Motion for Sanctions for Spoliation of Evidence.................................19

e.    The Information is Needed to Support the County's Motion for a Gag Order ........................................................20

C.    The Reporter's Privilege Does Not Protect Kawano's Personal Observations......................................................21

D.    The Petitioners Are Not Entitled to a Protective Order Under Rule 26(c) .........................................................22

V.      CONCLUSION ........................................................................24

# TABLE OF AUTHORITIES

Cases

*Ayala v. Ayers,*
668 F. Supp. 2d 1248 (S.D. Cal. 2009) ................................................... 12, 13, 14

*Coalview Centralia, LLC v. Transalta Centralia Mining LLC,*
No. 3:18-CV-05639-RBL, 2019 WL 2563851
(W.D. Wash. Mar. 21, 2019) ..................................................................22

*Dillon v. City and County of San Francisco,*
748 F. Supp 722 (N.D. Cal. 1990) ........................................................21

*Doe v. Reed,*
No. C 09-5456 BHS, 2010 WL 3947501
(W.D. Wash. Oct. 6, 2010) ..................................................................23

*Est. of Gonzales ex rel. Gonzales v. Hickman,*
No. EDCV 05-660 MMM RCX, 2007 WL 3231956
(C.D. Cal. Apr. 18, 2007) .....................................................................12

*Goodman v. U.S.,*
369 F.2d 166 (9th Cir. 1966) ...............................................................11

*Goulart v. Barry,*
1991 WL 294544 (D.C. 1991) ..............................................................12

*Gregory v. Miami-Dade Cnty.,*
No. 13-21350-CIV, 2015 WL 3442008
(S.D. Fla. May 28, 2015) ............................................................... 18, 19

*Heat and Control, Inc. v. Hester Industries, Inc.,*
785 F.2d 1017 (Fed. Cir. 1986) ...........................................................11

*In re January 11, 2013 Subpoena by Grand Jury of Union County,*
432 N.J. Super. 570, 75 A.3d 1260 (2013) ...........................................13

*In re Credito,*
No. C22-1549JLR, 2022 WL 16744212
(W.D. Wash. Nov. 6, 2022) ..................................................................22

iii

*In re Slack*,
    768 F. Supp. 2d 189 (D.D.C. 2011) ...................................................12

*In re von Bulow*,
    828 F.2d 94 (2d Cir. 1987) ...........................................................13

*JZ Buckingham Investments, LLC v. United States*,
    78 Fed. Cl. 15 (Fed. Cl. Ct. 2007) ...................................................11

*Medical Lab. Mgmt. Consultants v. American*
    *Broadcasting Companies, Inc.,* 306 F.3d 806 (9th Cir. 2002) ...................... 19, 20

*Miller v. Mecklenburg County*,
    602 F. Supp. 675  (W.D.N.C. 1985)...................................................21

*Pinkard v. Johnson*,
    118 F.R.D. 517 (M.D. Ala. 1987) .....................................................13

*Shoen v. Shoen*,
    5 F.3d 1289 (9th Cir. 1993) ....................................................... 15, 16

*Sims v. Blot*,
    534 F.3d 117 (2d Cir. 2008) ....................................................... 12, 13

*Soto v. City of Concord*,
    162 F.R.D. 603 (N.D. Cal. 1995) .....................................................10

*Surfvivor Media, Inc. v. Survivor,*
    *Prods*., 406 F.3d 625 (9th Cir. 2005) ...............................................11

*Thomas v. Hickman*,
    No. 1:06-cv-00215-AWI-SMS, 2007 WL 4302974
    (E.D. Cal. Dec. 6, 2007) ...........................................................11

<u>Rules</u>
Fed. R. Civ. P. 26 ......................................................................10

Fed. R. Civ. P. 26(b)(1)................................................................10

Fed. R. Civ. P. 26(c)............................................................... 22, 23

## DEFENDANT COUNTY OF MAUI'S
## MEMORANDUM IN OPPOSITION TO NON-PARTY GRAY
## MEDIA GROUP INC., D/B/A KGMB/KHNL AND LYNN KAWANO'S
## <u>MOTION FOR PROTECTIVE ORDER AND/OR TO QUASH SUBPOENA</u>

Defendant County of Maui ("County"), by and through its attorneys, Moana M. Lutey, Corporation Counsel, and Keola R. Whittaker and Richelle K. Kawasaki, Deputies Corporation Counsel, hereby opposes Non-Party Gray Media Group Inc. dba KGMB/KHNL and Lynn Kawano's Motion for Protective Order and/or to Quash Subpoena (filed November 26, 2022) (Dkt 1) ("Motion").

Non-Party Gray Media Group Inc. dba KGMB/KHNL and Lynn Kawano ("Petitioners") are moving this Court for the issuance of a protective order and/or the quashing of the subpoena duly served upon Lynn Kawano on November 10, 2022.  (Dkt 1)  The Motion should be denied because it fails to meet the burden under Rule 45 to quash a subpoena, and petitioners have not demonstrated that the "reporter's privilege" applies to Ms. Kawano.

## I.    INTRODUCTION

The County agrees with Petitioners that third-party subpoenas to the press should be issued sparingly.  It is not the County's regular practice to seek information from the press in litigation in which they are not parties.  The unique facts of this case, however, necessitate the subpoena at issue.

1

There are three main reasons why the subpoena is required and the Motion should be denied:

*First*, television news reporter Lynn Kawano waived any rights to the reporter's privilege because she recommended that all three Plaintiffs hire attorney Michael Green to sue the County, likely shared information with Mr. Green, and used what she learned in her reporting to make an independent complaint with the FBI.

*Second*, Plaintiffs either destroyed or are unable to locate key pieces of evidence that Kawano likely has in her possession.

*Third,* Kawano has unique information that the County cannot obtain elsewhere. Most significantly, Kawano is a witness to a scheme that Plaintiff Alisha Constantino developed to obtain a large money judgement from the County — a scheme that her friend called a "Golden Ticket." Kawano also has critical information necessary for the County's motion for a gag order and motion for sanctions for spoliation of evidence.

The Motion should be denied and Petitioners should be ordered to comply with the subpoena.

## II.    RELEVANT BACKGROUND

### A.    The Golden Ticket Scheme

In *Alisha N.K. Constantino v. Brandon Saffeels, et al.* (CV 21-00316 LEK-RT), Plaintiff Constantino claims damages arising from text messages and a phone call with former police officer Brandon Saffeels.   In these communications he allegedly made incriminating and sexually suggestive comments.   Constantino claims the County is liable for her damages.

The County recently discovered that Constantino intended to file a claim for damages against the County *before* she received the offending text messages and phone call from Saffeels.   To obtain the highest damages possible, Constantino carefully scripted her text messages and developed a plan for a recorded phone call with Saffeels to generate evidence for her lawsuit.

Constantino paired up with disgruntled former County employee Jennifer Boswell who suggested the scheme. (Declaration Keola Whittaker "Whittaker Decl.," Ex. 1,[1] Jennifer Boswell Deposition "Boswell Depo.", 12:4-6; 13:18-21; 35:5-36:10; 36:17-37:2; 37:5-21; 38:8-16; 38:20-42:8; 64:13-25; 67:21-68:6; 75:6-20.) Constantino met Boswell through an abusive ex-boyfriend.  (*Ibid.*, Boswell Depo., 21:4-12; 22:22-23:1; 23:18-16:15.)  Together, they developed a plan.  Since

---

[1] Unless otherwise noted, all references to Exhibits are exhibits to the Whittaker Declaration.

Boswell was previously married to a police officer, and worked for the police department, she claimed to know that litigation against the County could result in money judgments.   (*Ibid.*, Boswell Depo., 12:4-6; 14:14-19; 54:5-6; 54:17-23.) Boswell suggested exactly what text messages Constantino should send to Saffeels and scripted a phone conversation that would produce the evidence Constantino needed to obtain big money damages.   Boswell called this scheme Constantino's "Golden Ticket." (*Ibid.*, Boswell Depo., 35:5-36:10; 36:17-37:2; 37:5-21; 38:8-16; 38:20-42:8; 47:22-48:15; 64:13-25; 67:13-68:6; 75:6-20.)

The Golden Ticket Scheme involved several steps:

First, Constantino would text Saffeels and ask him to call her.   Constantino sent Saffeels a text at 2:24 a.m. on July 28, 2019 saying:

*Hey I saw you working when I passed the gas station in Wailuku.*

(*Ibid.*, Boswell Depo., Ex. 1 (4), p.6 COM 00236.)

That was a lie. Constantino admitted that she did not see Saffeels at a gas station but presumably said that to initiate a conversation.   (*Ibid.*, Ex. 2, Deposition of Alisha Constantino "Constantino Depo.", 51:20-53:12.) Boswell assisted with the lie; she knew Saffeels's location because she worked for the police department's dispatch and helped script Constantino's text messages. (*Ibid.*, Ex. 1, Boswell Depo., 41:5-42:8; 62:6-63:6; 64:13-67:8.)

4

When Saffeels asked Constantino why she didn't say hi when she saw him, she responded:

> *You wouldn't have told me hi with your boys hanging around [winking face emoji] [tongue out emoji]*

(*Ibid.*, Boswell Depo., Ex. 1 (4), p.6 COM 00236.)

Constantino asked Saffeels to call her about an hour later, at 3:34 a.m. (*Ibid.*, Ex. 2; Constantino Depo., 55:24-56:3.) Boswell and Constantino came up with an idea on how to record the call: Boswell would surreptitiously sit in on a three-way phone call with them and record everything. (*Ibid.*, Ex. 1, Boswell Depo., 49:6-23; 64:6-68:8.)

The "Golden Ticket" scheme worked. Saffeels called Constantino at her request. Boswell was on the other line and recorded everything.  During the call, Boswell directed Constantino, through simultaneous text messages, on exactly what to say to elicit the desired response.  (*Ibid.*, Boswell Depo., 41:11-14.)  In fact, Boswell came up with an idea on how to get Saffeels to make sexually suggestive comments:  Boswell told Constantino to ask Saffeels if he had any "bad intentions" with her. (*Ibid.*, Ex.1, Boswell Depo., 41:22-43:8; 45:2-15; 46:7-11.)  When that didn't work as intended, Boswell told Constantino to ask Saffeels if he was into "Fifty Shades of Grey." (*Ibid.*, Ex. 1, Boswell Depo., 41:22-43:8.)  Once Saffeels said what they needed for their lawsuit against the County, Boswell told Constantino

5

to end the call, and she did. (*Ibid.*, Ex. 1, Boswell Depo., 41:22-43:8; 45:23-46:11.) When asked why they did this, Constantino admitted it was to generate evidence. (*Ibid.*, Ex.2, Constantino Depo., 56:2-3.)

Boswell testified that she and Constantino prompted Saffeels to call Constantino, came up with a script, and recorded the call to get the evidence so that Constantino could get out of a DUI charge and file a lawsuit against the County. (*Ibid.*, Ex.1, Boswell Depo., 38:4-16; 41:22-43:8.) Boswell repeatedly called this scheme Constantino's "Golden Ticket" in sworn testimony. (*Ibid.*, Ex. 1, Boswell Depo., 37:5-21; 41:22-43:8; 47:22-48:15; 67:9-20.)

At trial, the County will argue that Constantino should not be awarded any damages because instead of ending communications with Saffeels, she initiated contact with him and scripted a phone call to get him to make certain statements in order to get money from the County and to get out of DUI charges.

## B.    Constantino No Longer Has Key Pieces of Evidence

The County served Constantino with three separate Requests for Production of Documents pursuant to Rule 34 of the Federal Rules of Civil Procedure. (Whittaker Dec., Exs. 5, 6, & 7.) Among other things, the County requested production of documents relating to her interactions with former police officer Brandon Saffeels; documents relating to her claimed damages; correspondence and text messages relating to her claim; and all audio recordings and notes relating to her

6

claims.  (*Id.*)  In response to these requests, Constantino produced only 8 pages of documents, all of which are copies of the scripted text messages with Saffeels. (Whittaker Dec. ¶ 8.) Constantino did not produce the recorded phone call, text messages with Boswell, communications with the press, or any evidence of damages. (*Id.*)

On October 31, 2022, Constantino's attorney admitted in a meet and confer correspondence that they produced all documents that were responsive to the document requests in her possession. (Whittaker Decl., ¶ 9 & Ex. 8.)  Constantino also testified that she does not have any other relevant documents. (Ex. 2, Constantino Depo., 86:13-23.) A motion to compel documents that Plaintiff does not have would therefore be futile.

The County issued subpoenas to several third parties, including Verizon Wireless, Boswell and Kawano, in an effort to obtain key materials that are missing from Constantino's production.  (Whittaker Dec. ¶ 10.) While Boswell produced a copy of the recorded phone call at issue, the County has reason to believe that it differs from the recording provided to Kawano, as detailed below.  Boswell did not produce any text communications she had with Constantino and said that she does not have them.  (Ex.1, Boswell Depo., 17-2-4; 41:11-16; Whittaker Dec., ¶ 9.)

7

### C.     Kawano Becomes Part of the Golden Ticket Scheme

Boswell and Constantino didn't immediately report what happened to legal authorities.  Instead, they decided to recruit acclaimed television news reporter Lynn Kawano to break the story because that would have a maximum impact.  (Whittaker Decl., Ex. 1, Boswell Depo., 31:21-32:4.) Constantino and Boswell provided Ms. Kawano with key information including copies of text messages and a recorded phone call, among other things. (*Ibid*., Boswell Depo., 33:1-5.)

In her report, Kawano played portions of the recorded call and reported certain portions of the text messages out of context.[2]  It is possible that Kawano was only provided with portions of the call recording and text messages because some of Kawano's reporting, notably that Constantino did not know Saffeels prior to her DUI arrest, is belied by the call recording itself.  (*See* Ex. 2, Constantino Depo. Exhibit 25.)

Rather than simply report the story, Kawano stepped out of the reporter's role and made herself part of the story.  Kawano recommended that Constantino hire her friend, attorney Michael Green for her lawsuit, and provided Constantino with Green's office phone number.  (Ex. 1, Boswell Depo., 29:18-25; Ex. 2, Constantino

---

[2] *See* Lynn Kawano, "Maui officer accused of offering to throw trial for a woman he arrested," Aug. 21, 2019, available at https://www.hawaiinewsnow.com/2019/08/21/maui-officer-under-investigation-inappropriately-reaching-out-woman-he-arrested/.

Depo., 64:12-25.) While Constantino and Boswell reached out to Kawano in late July 2019, Kawano held the story for weeks and reported it only after Constantino hired Green and then interviewed Green for the story.  (Whittaker Decl., Ex. 1, Boswell Depo., 31:1-32:3.)  Plaintiff Alisha Constantino and the two other Plaintiffs in a related case – Ronda Smythe and Lianna Kanno – also testified under oath that they hired Mr. Green at Lynn Kawano's suggestion.  (Whittaker Decl. Exs. 2, 3, & 4, Constantino Depo. 64:2-25; Rhonda Smythe Deposition "Smythe Depo.", 94:1-95; Liana Kannno Deposition "Kanno Depo.", 133:9-134:3.)   The County is informed and believes that Kawano and Green have such a close relationship[3] that it is likely that she provided Green with information that has been withheld from the County.

Kawano also provided information she obtained in her reporting to the FBI. According to Ms. Boswell, Kawano made an independent report to the FBI and likely provided the FBI with the recording and other information she obtained from

---

[3] This belief is based on the facts described herein and because Kawano repeatedly interviews Green including in cases in which he does not represent either party.  Kawano describes Green as a "legal expert." *See, e.g.*, Lynn Kawano, "Experts: Suspect in brutal attack outside police station likely to use insanity defense again," Feb. 18, 2022, available at https://www.hawaiinewsnow.com/2022/02/19/suspect-charged-brutal-attack-outside-police-station-expected-use-insanity-defense-again/ (naming Green as a "legal expert"); Lynn Kawano, "Experts: As more suits are filed, cost to taxpayers for crash involving officers could top $10M", Apr. 14, 2022, available at https://www.hawaiinewsnow.com/2022/04/15/more-suits-are-filed-cost-taxpayers-near-fatal-crash-involving-officers-could-top-10m/. At minimum, providing Green with several clients that could potentially make him hundreds of thousands of dollars suggests they have a relationship that goes beyond one of interviewer and interviewee.

Boswell and Constantino. (Ex. 1, Boswell Depo., 50:12-51:16.) Despite sharing information with law authorities and Plaintiffs' attorney, Kawano refuses to provide information to the County.

### D.   Kawano's Attorneys Reject Offers to Negotiate the Timing and Scope of the Subpoena

Since the County is unaware of how Kawano stores her documents, what documents she has, or the time and cost involved in finding relevant materials, the County suggested more than once that Kawano's attorney work with the County to develop a reasonable and agreeable scope of the subpoena.  (Whittaker Dec., ¶ 11, Ex. 9.)  Those requests were repeatedly rejected, presumably so Kawano could have grounds upon which to file this motion.  (*Id*.) The County also offered to negotiate a date for Kawano's deposition that works with her schedule.  (*Id*.) Those offers were also rejected. (Whittaker Dec., ¶ 11.)

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, a party may obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case.  Fed.R.Civ.P. 26(b)(1).  "Relevancy should be "construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v.*

*Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)). Relevant information does not have to be admissible; relevance is construed broadly, and litigants may obtain discovery so long as it is "reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 635 (9th Cir. 2005). "The scope of discovery under the Federal Rules is extremely broad. A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Id.,* quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).

The party seeking to quash a subpoena bears the burden of demonstrating that the subpoena is overbroad or unduly burdensome. *See, e.g., Thomas v. Hickman*, No. 1:06-cv-00215-AWI-SMS, 2007 WL 4302974, at *6 (E.D. Cal. Dec. 6, 2007). The party cannot rest on conclusory assertions. *Goodman v. U.S*., 369 F.2d 166, 169 (9th Cir. 1966) (reversing the quashing of a subpoena because of lack of specific evidence of burden). "The party must provide specific and compelling proof that the burden is undue." *JZ Buckingham Investments, LLC v. United States*, 78 Fed. Cl. 15, 25 (Fed. Cl. Ct. 2007) (denying motion to quash). The burden on the party moving to quash a subpoena is a "heavy one." *Heat and Control, Inc. v. Hester Industries, Inc*., 785 F.2d 1017, 1024-25 (Fed. Cir. 1986).

In addition, a person who withholds otherwise discoverable material or testimony based upon a claim of privilege bears the burden of demonstrating that the privilege applies and that withholding is excused.  *In re Slack*, 768 F. Supp. 2d 189, 193 (D.D.C. 2011).

## IV.   ARGUMENT

### A.   Kawano Waived Any Privilege by Providing Information to Green and the FBI

"[L]ike other privileges, . . . the journalist's privilege may be waived." *Ayala v. Ayers,* 668 F. Supp. 2d 1248, 1250 (S.D. Cal. 2009).  As relevant here, courts will find an implied waiver where "a journalist . . . disclose[s] information to advance the interests of one litigant and then invoke[s] the journalist's privilege to prevent discovery of this same information by another litigant." *Id.* (citing *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008)). To do otherwise "would work a manifest injustice … because it would deprive [one party] of discovery to which their opponents have been given access." *See Est. of Gonzales ex rel. Gonzales v. Hickman,* No. EDCV 05-660 MMM RCX, 2007 WL 3231956, at *5 (C.D. Cal. Apr. 18, 2007); *see also Goulart v. Barry*, 1991 WL 294544 at *4 (D.C. 1991) (noting a "long line of cases which recognize that a reporter has the ability to waive a reporter's privilege"). Courts routinely hold that fairness requires a waiver where a reporter has provided information to advance the interests of one litigant but refuses to provide that same

12

information to an opposing party. *See, e.g.*, *Pinkard v. Johnson*, 118 F.R.D. 517, 523 (M.D. Ala. 1987) (finding that a journalist waived his privilege when he gave plaintiff's counsel a signed affidavit concerning the nature and substance of a conversation at issue); *Ayala*, 668 F.Supp.2d at 1250; *Sims*, 534 F.3d at 132 (implied waiver will be found when a privilege is "use[d] both as a shield and a sword"); *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (a privilege holder may not selectively disclose information to one litigant and then withhold that same information from another). Once a waiver is shown, the Court need not analyze the *Shoen* factors to determine if the privilege can be overcome; the materials are discoverable as with any other third party that holds relevant information. *See Ayala*, 668 F.Supp.2d at 1250.

There is sufficient evidence in the record that Kawano provided information to Plaintiffs' attorney and provided information to the FBI. (Ex. 1, Boswell Depo., 50:12-51:16.) That alone constitutes a waiver. *In re January 11, 2013 Subpoena by Grand Jury of Union County*, 432 N.J. Super. 570, 75 A.3d 1260 (2013) (journalist waived privilege by divulging information to the FBI).

In addition, Kawano suggested all three plaintiffs to hire a lawyer that regularly grants her interviews. In doing so, Kawano was not acting as a reporter who just reported facts; she was also serving as Plaintiffs' advisor. Kawano's

13

decision to serve in both capacities is also an explicit waiver under the law. *Ayala*, 668 F.Supp.2d at 1250.

*Ayala v. Ayers* is highly instructive. In that case, the plaintiff issued a subpoena to a third-party author of a book about the case, seeking unpublished materials relating to the book. *Id.* at 1249. The author objected to the subpoena and indicated that he would not comply. *Id.* at 1249-50. That same author, however, provided a manuscript to one party's counsel and admitted that he wished to be of assistance to that party. *Id.*

The court found that the author waived the reporter's privilege and granted a motion to compel. Noting that the author clearly "wished to be of assistance to [the defendant]" by providing the materials to only that party, the court barred the author from "us[ing] the privilege as both a shield and a sword by making selective disclosures." *Id.* It instead held that "[a] reporter is not free to give [information] . . . to a litigant, and later invoke the qualified reporter privilege to keep this information from the Court [or another litigant]." *Id.* (internal quotation marks omitted). Permitting otherwise would be both "unfair and improper." *Id.*

The *Ayala* court's reasoning should be applied here. As in *Ayala*, it is evident that Kawano wished to be of assistance to Plaintiffs, provided materials and information to Green and the FBI to assist Plaintiffs, and worked with Plaintiffs'

14

counsel to develop her news reports.  Having done so, Green and Kawano were able to weaponize only the most advantageous facts, while the County is denied access to other information in Kawano's possession and is left grasping in the dark.  This is precisely the kind of situation that the sword-and-shield waiver doctrine is meant to prevent.

In the interests of fairness, the County is entitled to obtain information and materials from Kawano.  Allowing Petitioners to use the reporter's privilege as a sword and a shield on behalf of Plaintiffs would be unfair and improper.

### B. The Qualified Journalist's Privilege to Non-Confidential Information is Easily Overcome.

Even if applicable, the journalist privilege is a qualified one, not absolute; "the process of deciding whether the privilege is overcome requires that the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in the light of the surrounding facts, and a balance struck to determine where lies the paramount interest." *See Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir. 1993). Where the information sought is not confidential, a civil litigant seeking to overcome an assertion of the journalist's privilege must establish that the requested material is: "(1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case.  We note that there must be a showing of actual relevance; a showing of potential relevance

will not suffice." *Shoen*, 48 F.3d at 416.  The County can easily establish what is required to overcome the journalist's privilege.

### 1.    The County has Exhausted all Reasonable Alternative Sources

The County has deposed all three Plaintiffs and sought information from them through Rule 34 requests for production of documents.  (Whittaker Dec., ¶ 4, Exs. 5, 6, & 7.) The Plaintiffs have not produced a single communication with Kawano, the call recording at issue in Constantino's matter, or text communications between Boswell and Constantino.  (Whittaker Dec., ¶ 8.) Since Plaintiffs claim that they have produced all materials in their possession (Whittaker Dec., ¶ 9, Ex. 8), a motion to compel would be futile.

The County also sought information from third parties, including Constantino's cell phone carrier and Boswell.  (Whittaker Dec., ¶ 10.) Key information is still missing that is relevant to the County's defenses including Kawano's role in the Golden Ticket Scheme, how Kawano worked with Green to develop stories on this case that would advance Green and Plaintiffs' financial interests, and whether the Plaintiffs provided Kawano with full and complete copies of the relevant recording and text messages.  That information is only available from Petitioners.

16

### 2. The Information Sought is not Cumulative

The requested documents are not cumulative because they contain information that the County cannot obtain elsewhere.  Unlike the prototypical case of the reporter's privilege, Kawano has not only gathered information relating to the alleged facts that form the basis for Plaintiffs' claims, but may have also alerted Plaintiffs of potential legal claims, suggested they hire a specific attorney, and worked with that attorney to report on issues relating to Plaintiffs.  In short, Kawano made herself a witness and the County is entitled to understand the role she played in the Boswell-Constantino Golden Ticket Scheme.  Since she alone possesses that information, the requested information is unique, not cumulative.

### 3. The Information Sought is Unquestionably Relevant to the County's Defenses and Plaintiffs' Claims

The information sought from Kawano is relevant for the County's defense in at least five different ways:

#### a. The Information is Relevant to the County's "Failure to Mitigate" Affirmative Defense

First, the County is entitled to question Kawano about her participation in the Golden Ticket Scheme to support its "failure to mitigate" affirmative defense.  Boswell testified that she and Constantino used Kawano to promote their theory of the case.  Kawano was necessary to get that Golden Ticket. Kawano participated in that scheme — knowingly or unknowingly — by recommending a lawyer that could

17

sue the County on Constantino's behalf.  Then, Kawano interviewed the same attorney she recommended which helped that attorney promote Plaintiffs' legal theories to public.  The County is entitled to evidence for its defense that all four people — Constantino, Boswell, Kawano, and Green — all played a role in the Golden Ticket Scheme that involved carefully scripted evidence to obtain a large financial payout.  The County is entitled to depose Kawano to obtain evidence in support of its defense.

### b.      The Information is Relevant to the County's "Statute of Limitations" Affirmative Defense

Second, at issue in this case is whether Plaintiffs' claims are barred by the statute of limitations.  The date on which Plaintiffs had actual or constructive knowledge of their claims is therefore highly relevant.  Since all the Plaintiffs have testified under oath that they received advice from Kawano regarding the hiring of an attorney, it is possible that Kawano will have knowledge as to whether Plaintiffs understood that they had a legal claim against the County prior to contacting her.

### c.      The Information is Relevant to Constantino's Claim for Damages

Third, the requested information is relevant to Constantino's claim that she was damaged by the recorded phone call.  Kawano is likely to have information that relates to the reasons why Constantino and Boswell asked her to break the story and whether they told her that they recorded it for purposes of a lawsuit

18

against the County. Plaintiff's behavior during the alleged events in a Section 1983 action is precisely the type of information that other courts have found to be highly relevant. *See Gregory v. Miami-Dade Cnty.*, No. 13-21350-CIV, 2015 WL 3442008, at *4 (S.D. Fla. May 28, 2015) (denying NBC's Motion to Quash and holding that the journalist's privilege is not applicable in a Section 1983 action where "the reporter's testimony regarding [plaintiff's] statements, which purportedly describe [plaintiff's] actions at the time … is central to this dispute and thus is highly relevant to this action."). If Kawano and Green worked together to formulate a news report about the events in this case that contained knowingly misleading information, that would also be relevant to impeach Plaintiffs' allegations.

> **d.      The Information is Required for the County's Motion for Sanctions for Spoliation of Evidence.**

Fourth, the information is relevant for the County's motion relating to Plaintiffs' spoliation of key evidence.  Specifically, Plaintiff Smythe does not have her complete text exchange with Saffeels and only produced snippets that are helpful for her case.  (Ex. 4, Smythe Depo., 65:13-66:2.) Similarly, Plaintiff Constantino and third-party Boswell no longer have a copy of the text exchange between them which shows proof of their scheme. (Ex. 1, Boswell Depo., 17:2-4; Ex. 2, Constantino Depo., 66:19-68:4.)  To obtain case terminating sanctions based on

spoliation, the County will show that it is prejudiced because this information is not available from another source. *See Medical Lab. Mgmt. Consultants v. American Broadcasting Companies, Inc.,* 306 F.3d 806, 825 (9th Cir. 2002) (availability of other sources of evidence compensating for the spoliated evidence lessens any risk of prejudice at trial).  The County must subpoena Ms. Kawano to meet this legal requirement.

e.    **The Information is Needed to Support the County's Motion for a Gag Order**

Fifth, the County will file a motion for a gag order in this case due to Mr. Green's frequent interviews with the press regarding this case and the likelihood that his interviews will influence a potential jury pool.  Since Kawano told all three Plaintiffs to hire Green, and Kawano interviewed Green for stories relating to this case, the County is entitled to know whether Green and Kawano have an explicit or implicit arrangement in which Kawano furnishes him with clients and, in turn, Green provides her with interviews and/or non-public information.  Those facts will help this Court determine whether a gag order is appropriate and the scope of such an order. Without such information, it will be more difficult for the County to develop an argument for a gag order.

20

In sum, the County will be severely prejudiced if it is not allowed to depose Kawano, who, due to the unusual circumstances present here, has become a key witness.

### C. The Reporter's Privilege Does Not Protect Kawano's Personal Observations

At minimum, the County has a right to depose Ms. Kawano about her personal observations as a witness, even if she made those observations while conducting her reporting. *See Dillon v. City and County of San Francisco*, 748 F. Supp 722, 726 (N.D. Cal. 1990) (holding that the privilege did not apply to personal observations of a reporter); *Miller v. Mecklenburg County*, 602 F. Supp. 675 679 (W.D.N.C. 1985) ("[A reporter can be] questioned about an incident to which he or she may be a witness like any other member of the public. In such a case, there is no intrusion into newsgathering or the special functions of the press.")

Much of information sought by the subpoena relates to Kawano's role as advisor to Plaintiffs, not her role as journalist.  For example, it is evident that Kawano either directly or indirectly indicated to Plaintiffs that they may have a claim against the County, suggested that they hire attorney Michael Green, and that Kawano assisted Plaintiffs by making her own independent report to the FBI. Information relating to those conversations and reports are relevant to the County's defenses, including its statute of limitations defense and its defense relating to the

21

Golden Ticket Scheme described above.  The County is entitled to depose Kawano about her actions and observations relating to her role as advisor to and advocate for Plaintiffs.

### D. The Petitioners Are Not Entitled to a Protective Order Under Rule 26(c)

Petitioners seek a protective order pursuant to Federal Rule of Civil Procedure 26(c) as an alternative to their request to quash the subpoena.  Rule 26(c) states that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending.... The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed.R.Civ.P. 26(c).  The meet and confer requirement is not met by simply conferring about a motion to quash; the parties are required to meaningfully discuss the scope of the subpoena until they either reach agreement or an impasse.  *Coalview Centralia, LLC v. Transalta Centralia Mining LLC*, No. 3:18-CV-05639-RBL, 2019 WL 2563851, at *5 (W.D. Wash. Mar. 21, 2019) (Since "the parties have not attempted to resolve any dispute regarding the documents to be produced in compliance with the subpoena [and] the parties have not reached an impasse regarding the current scope of the subpoena… the parties have not completed the meet and confer requirement."); *In re Credito*, No. C22-1549JLR, 2022 WL

22

16744212, at \*6 (W.D. Wash. Nov. 6, 2022) ("The court finds that the parties' meet-and-confer conference did not meet Local Rule 26's 'good faith' requirement because … the parties did not discuss entering a protective order without moving the court for one."). Failing to meet and confer about the potential scope of a protective order is grounds alone to deny the motion. *Doe v. Reed*, No. C 09-5456 BHS, 2010 WL 3947501, at \*1 (W.D. Wash. Oct. 6, 2010).

The County indicated multiple times that it is willing to negotiate the scope and timing of the subpoena to limit the burden on Petitioners.  (Whittaker Dec., ¶ 11, Ex. 9.)  Those offers were rejected.  (*Id.*) Counsel for Petitioners did not suggest a protective order in any meet and confer call or correspondence.  (*Id.*) If Petitioners engaged in a meaningful meet and confer regarding the scope of the subpoena, that would have limited the issues this Court is required to resolve.  Since Petitioners failed to meet and confer in good faith regarding the scope of the subpoena, they should not be able to obtain relief in the form of a Rule 26(c) protective order.

The Court also should not grant Petitioner's request for a protective order because they failed their burden to make the requisite showing that the subpoena was unduly burdensome or outside the scope of materials that may be obtained from third parties.  The protective order that is already in place should provide Petitioners with adequate protections for confidential information.

23

## V.    CONCLUSION

For the foregoing reasons, the County respectfully requests that the Motion to

Quash be denied.

DATED: Wailuku, Maui, Hawaiʻi, December 6, 2022.

MOANA M. LUTEY
Corporation Counsel
Attorneys for Defendant
COUNTY OF MAUI

By /s/ Keola R. Whittaker
   KEOLA R. WHITTAKER
   RICHELLE K. KAWASAKI
   Deputies Corporation Counsel

24