UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| IN RE:<br><br>GRAY MEDIA GROUP INC., DBA<br>KGMB/KHNL and LYNN KAWANO | MC. NO. 22-00592 LEK-RT |

**ORDER GRANTING GRAY MEDIA GROUP INC. AND LYNN KAWANO'S**
**MOTION FOR PROTECTIVE ORDER AND/OR TO QUASH SUBPOENA**

On November 26, 2022, Movant Gray Media Group Inc.,

doing business as KGMB/KHNL ("Gray Media"), and Lynn Kawano

(collectively "Kawano") filed the instant motion seeking a

protective order against or to quash Defendant County of Maui's

("County") First Amended Notice of Taking Deposition Upon Oral

Examination of Lynn Kawano and Production of Documents, served

on November 10, 2022 ("11/10 Subpoena"). See Kawano's Motion

for Protective Order and/or to Quash Subpoena, filed 11/26/22

(dkt. no. 1) ("Motion"). The County filed its memorandum in

opposition on December 6, 2022, and Kawano filed her reply on

December 20, 2022. [Dkt. nos. 8, 9.] This matter came on for

hearing on January 5, 2023. Kawano's Motion is hereby granted

for the reasons set forth below.

## <u>BACKGROUND</u>

The County is a defendant in <u>Ronda Smythe & Liana P.</u>
<u>Kanno v. Brandon Saffeels, et al.</u>, CV 21-00056 LEK-RT
("<u>Smythe</u>"), and <u>Alisha N.K. Constantino v. Brandon Saffeels, et</u>
<u>al.</u>, CV 21-00316 LEK-RT ("<u>Constantino</u>" and collectively
"Underlying Cases").  <u>See</u> <u>Smythe</u>, Second Amended Complaint for
Injunctive Relief and Damages, filed 5/3/21 (dkt. no. 16)
("<u>Smythe</u> Complaint"), at ¶ 1; <u>Constantino</u>, Complaint for
Injunctive Relief and Damages, filed 7/23/21 (dkt. no. 1)
("<u>Constantino</u> Complaint"), at ¶ 1.[1]  Plaintiffs Liana P. Kanno
("Kanno") and Ronda Smythe ("Smythe" and collectively "Smythe
Plaintiffs") allege, *inter alia*, that they encountered Defendant
Brandon Saffeels ("Saffeels") while he was performing his duties
as an officer with the Maui Police Department ("MPD"), and that
Saffeels subsequently used his position to try to establish a
physical relationship with them, but they refused his advances
and attempted to make internal MPD complaints against him.  <u>See</u>
<u>Smythe</u> Complaint at ¶¶ 9-15, 18-22.  Plaintiff Alisha N.K.
Constantino ("Constantino") has pled similar allegations.  <u>See</u>
<u>Constantino</u> Complaint at ¶¶ 8-9.  The Smythe Plaintiffs and

---

[1] <u>Smythe</u> and <u>Constantino</u> have been consolidated for pretrial
and discovery purposes.  <u>See</u> <u>Smythe</u>, Stipulation to Consolidate
Case Nos. 1:21-CV-00056-LEK-RT and 1:21-CV-00316-JMS-RT for
Purposes of Pretrial Proceedings and Discovery, filed 5/16/22
(dkt. no. 91).

Constantino (all collectively "Plaintiffs") allege the County is liable for Saffeels's actions, based on various legal theories. See, e.g., Smythe Complaint at ¶ 28 (alleging the County "had an unwritten municipal policy or custom condoning harassment, including a policy or custom of inadequate training and supervision of municipal officers constituting deliberate indifference to the rights of citizens"); Constantino Complaint at ¶ 22 (alleging Saffeels's actions "were outrageous and part of a pattern of similar conduct of harassment of female arrestees engaged in by Officer Saffeels on prior occasions which were known and/or should have been known by Defendant County").

Gray Media is the owner and operator of Hawaii News Now ("HNN"), and Lynn Kawano is an HNN investigative reporter who has presented news reports about the alleged events that gave rise to the claims in the Underlying Cases, as well as other related or similar events. See Motion, Mem. in Supp. at 2; id., Decl. of David R. Major ("Major Decl.") at ¶ 3 (listing links to Kawano's news reports). The County served the 11/10 Subpoena on Kawano, directing her to appear for a deposition and to produce certain documents. [Motion at 1; Major Decl., Exh. A (11/10 Subpoena).] The 11/10 Subpoena directed Kawano to bring to the deposition

any and all records pertaining to:

3

> 1. Any attorney referral agreement or client referral agreement between Michael Green,[2] or any law firm associated with Michael Green, and Lynn Kawano, or any business entity that employs Lynn Kawano.
>
> 2. All communications to or from Michael Green, or his employees or agents, relating to Brandon Saffeels.
>
> 3. All communications with or relating to: (1) Ronda Smythe; (2) Liana Kanno; or (3) Alisha N.K. Constantino.

[Major Decl., Exh. A (11/10 Subpoena) at PageID.40.]

In the instant Motion, Kawano argues that this Court should issue a protective order or quash the 11/10 Subpoena because the information requested by the 11/10 Subpoena

> is either: (1) protected by the journalist's privilege; (2) not reasonably calculated to lead to the discovery of information related to the subject matter of this case; (3) contains information that is available through the existing parties or their counsel; or (4) . . . Kawano do[es] not have because of standard news agency retention policies.

[Motion, Mem. in Supp. at 1-2.]

In opposition, the County argues that Kawano waived her qualified journalist's privilege when "she recommended that all three Plaintiffs hire attorney Michael Green to sue the County, likely shared information with Mr. Green, and used what

---

[2] Michael Jay Green, Esq., is one of the attorneys representing Plaintiffs in the Underlying Cases.

she learned in her reporting to make an independent complaint
with the [Federal Bureau of Investigation ('FBI')]."  [Mem. in
Opp. at 2.]  The County also states that "key pieces of evidence
that Kawano likely has" were destroyed by or are unable to be
located by Plaintiffs, and that Kawano "has unique information
that the County cannot obtain elsewhere."  [Id.]  Specifically,
the County contends that Kawano "is a witness to a scheme that
Plaintiff Alisha Constantino developed to obtain a large money
judgment from the County . . . ."  [Id.]

        In reply, Kawano maintains that she has not waived her
journalist's privilege because, to do so, she would have had to
disclose information exclusively to one party and to the
detriment of another party in the instant litigation, and the
County merely speculates that she has done so because of a close
relationship with Mr. Green and cannot produce evidence that
Kawano produced privileged information to anyone.  See Kawano's
Reply at 3-4.  Kawano also submits: that the information that
the County seeks is cumulative because it is available from
other witnesses; that the requested information is not relevant;
and that the subpoena is unduly burdensome because the
information is available elsewhere.

## STANDARDS

### I.  Protective Order

Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding a deposition, or limiting its scope.  The party seeking a protective order bears the burden of showing good cause for the order by "demonstrating harm or prejudice that will result from the discovery. . . .

Apple Inc. v. Samsung Elecs. Co., 282 F.R.D. 259, 262-63 (N.D. Cal. 2012) (brackets in Apple) (footnotes omitted).

Generalized statements of harm are insufficient to demonstrate good cause:

A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted.  [Phillips v. Gen. Motors Corp., 307 F.3d 1206,] 1210-11 [(9th Cir. 2002)] (citing San Jose Mercury News[, Inc. v. U.S. Dist. Ct. - N. Dist. (San Jose)], 187 F.3d [1096,] 1102 [(9th Cir. 1999)]); see also Beckman [Indus., Inc. v. Int'l Ins. Co.], 966 F.2d [470,] 476 [(9th Cir. 1992)] ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.") (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) (internal quotation marks omitted)); Deford v. Schmid Prods. Co., 120 F.R.D. 648, 653 (D. Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

<u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1130–31

(9th Cir. 2003) (some alterations in <u>Foltz</u>).

## II.  <u>Quashing a Subpoena</u>

> On timely motion, the court for the district
> where compliance is required must quash or modify
> a subpoena that:
>
>> (i)  fails to allow a reasonable time to
>> comply;
>>
>> (ii) requires a person to comply beyond the
>> geographical limits specified in Rule 45(c);
>>
>> (iii) requires disclosure of privileged or
>> other protected matter, if no exception or
>> waiver applies; or
>>
>> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

**DISCUSSION**

## I.  <u>Whether the Information Sought is Privileged</u>

The Court turns first to Kawano's argument that the

information the County seeks in the 11/10 Subpoena is protected

by the journalist's privilege.  The Ninth Circuit, as well as

the majority of other circuits, has held that <u>Branzburg v.

Hayes</u>, 408 U.S. 665 (1972), established a qualified journalist's

privilege from being compelled to disclose in discovery facts

that she acquired "in the course of gathering the news."  <u>Shoen

v. Shoen</u>, 5 F.3d 1289, 1292 & n.5 (9th Cir. 1993) ("<u>Shoen I</u>")

(listing cases).

The parties do not dispute that, in the course of her
duties as an investigative reporter for HNN, Kawano obtained
information regarding the events described in Plaintiffs'
pleadings and regarding other similar events.[3]  Initially, the
women who spoke to Kawano agreed to provide statements to her
anonymously.  See, e.g., Lynn Kawano, *Maui officer accused of
offering to throw trial for woman he arrested*, Hawaii News Now
(updated Aug. 21, 2019, 2:52 PM HST),
https://www.hawaiinewsnow.com/2019/08/21/maui-officer-under-
investigation-inappropriately-reaching-out-woman-he-arrested/
("August 19, 2019 News Report").  However, since the August 19,
2019 News Report aired, Constantino has testified in her
deposition that she gave Kawano an anonymous interview for a
news report.  See Mem. in Opp., Decl. of Keola R. Whittaker
("Whittaker Decl."), Exh. 2 (excerpts of trans. of Remote
Videotaped Deposition of Alisha N.K. Constantino, taken 10/7/22
("Constantino Depo.")) at 64-65.  Kanno testified that she
reached out to Kawano because of Kawano's report about
Constantino, see id., Exh. 3 (excerpts of trans. of Remote
Videotaped Deposition of Liana P. Kanno, taken 1/6/22 ("Kanno

---

[3] Some of the information that the County seeks to obtain
from Kawano is not information she acquired while "gathering the
news," and therefore it is not protected by the qualified
journalist privilege.  The non-privileged information will be
addressed *infra*, Discussion Section III.

Depo.")) at 133, and Smythe testified that she had a brief
telephone interview with Kawano, see id., Exh. 4 (excerpts of
trans. of Videotaped Deposition of Ronda Smythe, taken 6/21/22
("Smythe Depo.")) at 94.  Having reviewed the August 19, 2019
News Report and the current record in this case, this Court
finds, for purposes of the instant Motion only, that Constantino
is the woman who is the subject of the August 19, 2019 News
Report.  Based on the current record, including the August 19,
2019 News Report, this Court finds that the information that
Plaintiffs disclosed to Kawano is no longer confidential.

The Ninth Circuit's test to determine when the
journalist's privilege applies is

> where information sought is not confidential, a
> civil litigant is entitled to requested discovery
> notwithstanding a valid assertion of the
> journalist's privilege by a nonparty only upon a
> showing that **the requested material is:
> (1) unavailable despite exhaustion of all
> reasonable alternative sources;
> (2) noncumulative; and (3) clearly relevant to an
> important issue in the case.**

Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("Shoen II")
(emphasis added).  The required relevance is "actual relevance"
– mere "potential relevance" is insufficient.  Id.  In other
words, "[e]ven if the information sought 'may well contain'
evidence relevant to a claim, if the evidence would not, without
more, establish the claim, actual relevance does not exist."
Wright v. Fred Hutchinson Cancer Rsch. Ctr., 206 F.R.D. 679, 682

(W.D. Wash. 2002) (quoting Shoen II, 48 F.3d at 417 (although statements to the press in 1991 may tend to show the speaker had ill will toward the subjects in 1990, such statements could not, without more, establish actual malice/libel and were not discoverable)).  Thus, the information that Kawano obtained about, or related to, the events giving rise to the Underlying Cases is privileged, unless the County establishes the three requirements set forth in Shoen II.

The County appears to be primarily seeking information that it believes Kawano has about Constantino.  Jennifer Boswell ("Boswell") has testified that she advised Constantino about the situation with Saffeels and, at that time, she thought Constantino needed a recording of Saffeels propositioning Constantino for Constantino to defeat the pending driving under the influence ("DUI") charge.  See Whittaker Decl., Exh. 1 (excerpts of trans. of Hybrid Deposition of Jennifer Boswell aka Jennifer Natividad, taken 11/23/22 ("Boswell Depo.")) at 38.  Boswell also testified that, in light of Saffeels's actions, Constantino had more than just the ability to avoid a DUI conviction, Constantino "had a golden ticket to a lawsuit[.]"  See id. at 37; see also id. at 47-48.  According to Boswell, at one point, she told Constantino to ask Saffeels to call instead of sending text messages.  Constantino did so, and Saffeels called Constantino.  Boswell was on another phone that was also

connected to the call between Constantino and Saffeels, and
Boswell recorded the conversation.  During that conversation,
Boswell sent Constantino text messages with suggestions and some
specific instructions about what Constantino was to say to
Saffeels.  See Whittaker Decl., Exh. 1 at 35-36; see also id. at
41-42.

    The County argues that the following information is
relevant to its defenses in the Underlying Cases and is only
available from Kawano: "Kawano's role in the Golden Ticket
Scheme,[4] how Kawano worked with Green to develop stories on
this case that would advance Green and Plaintiffs' financial
interests, and whether the Plaintiffs provided Kawano with full
and complete copies of the relevant recording and text
messages."  [Mem. in Opp. at 16.]

A.    **Recorded Conversation and Text Messages**

    The recorded conversation between Constantino and
Saffeels and the text message conversations that Saffeels had
with each Plaintiff are the basis for the Smythe Plaintiffs' and
Constantino's harassment and extortion claims.

---

[4] The County uses the phrase "Golden Ticket Scheme" to refer
to Constantino and Boswell's alleged plan to create the recorded
telephone conversation between Constantino and Saffeels to use
as evidence in support of Constantino's defense against the DUI
charge and/or in a civil action brought by Constantino.  See
Mem. in Opp. at 3-6.

### 1.    Smythe and Kanno's Text Messages with Saffeels

The County points out that Smythe was unable to produce the complete text conversation that she had with Saffeels, and the County argues Smythe "only produced snippets that are helpful for her case."  [Mem. in Opp. at 19 (citing Whittaker Decl., Ex. 4, Smythe Depo., 65:13-66:2).]  However, the County has not identified any evidence that Kawano was ever provided with either Smythe's text message conversation with Saffeels or Kanno's text message conversation with Saffeels. See generally Whittaker Decl., Exh. 4 (Smythe Depo.), Exh. 3 (Kanno Depo.).  The County has therefore failed to establish that Kawano has relevant information about Smythe's and Kanno's respective text conversations with Saffeels.

### 2.    Constantino's Recorded Conversation and Text Messages with Saffeels

In contrast, the County has identified evidence that: Kawano was provided with Constantino's recorded telephone conversation with Saffeels; Kawano was provided with the text message conversation between them; and both the recording and the text messages were used in the August 19, 2019 News Report. See Whittaker Decl., Exh. 1 (Boswell Depo.) at 32 (stating she "probably" gave the recording to Kawano), 33 (stating she "probably gave [Kawano] all those text messages"); Kawano, *Maui officer accused of offering to throw trial for woman he*

12

*arrested*, https://www.hawaiinewsnow.com/2019/08/21/maui-officer-under-investigation-inappropriately-reaching-out-woman-he-arrested/.

The County already has the recording and the text message conversation between Constantino and Saffeels.  Thus, to the extent that Kawano has this information, it is duplicative of information that the County already has.  The County argues the information is not duplicative because the versions that were provided to Kawano may have been different from the versions that the County now has.  See Mem. in Opp. at 8 ("It is possible that Kawano was only provided with **portions** of the call recording and text messages because some of Kawano's reporting, notably that Constantino did not know Saffeels prior to her DUI arrest, is belied by the call recording itself." (emphasis added)).  The County's position appears to be that Boswell provided Kawano with excerpts of the recording and text message conversation that would support Constantino and Boswell's plan for Constantino to avoid a DUI conviction and to prevail in a civil action against the County.  The County has not identified any evidence suggesting that the versions provided to Kawano were **substantively** altered.  Even if, as the County suspects, the versions provided to Kawano were only excerpts of the recording and text message conversation, Boswell's provision of excerpts is not actually relevant to Constantino's claims or the

13

County's defenses.  This Court therefore finds that: the
versions of the recorded telephone conversation and text message
conversation between Constantino and Saffeels that Kawano has
are duplicative of information the County already has; or if
there are some differences in the versions, those versions are
not actually relevant to the claims or defenses in Constantino.

### 3. <u>**Constantino's Text Messages with Boswell**</u>

Boswell was unable to provide the County with the text
messages she sent to Constantino during Constantino's recorded
conversation with Saffeels ("Boswell-Constantino Texts").  <u>See</u>
Whittaker Decl., Exh. 1 (Boswell Depo.) at 41 (stating she no
longer has those messages).  The Boswell-Constantino Texts are
actually relevant to Constantino's harassment and extortion
claims and the County's defenses to those claims.  The record is
unclear regarding the issue of whether Kawano was provided with
the Boswell-Constantino Texts.  Although Boswell testified that
she "probably gave [Kawano] all those text messages[,]" it is
not clear whether she was also referring to the Boswell-
Constantino Texts or only to the text messages between
Constantino and Saffeels.  [<u>Id.</u> at 33.]  Boswell stated: "That's
what I have now.  That's what I could find."  [<u>Id.</u>]  This
suggests that the text messages Boswell had at the time of the
deposition were the same as the text messages she provided to
Kawano in 2019.  If that is the case, Boswell would not have

14

provided Kawano with the Boswell-Constantino Texts because Boswell testified that she no longer had those text messages at the time of the deposition.  Further, based on the content of the August 19, 2019 News Report, it does not appear that Kawano was provided with the Boswell-Constantino Texts.

Even if Kawano was provided with the Boswell-Constantino Texts, the County has not established the other Shoen II factors.  The County has not shown that the Boswell-Constantino Texts are "unavailable despite exhaustion of all reasonable alternative sources."  See Shoen II, 48 F.3d at 416. The County "issued [a] third party subpoena[] to Verizon Wireless . . . to obtain documents and information missing in Constantino's production [of documents]."  [Whittaker Decl. at ¶ 10.]  The County does not state how Verizon Wireless responded to the subpoena.  Further, assuming that Verizon Wireless is Constantino's cellular service provider, the County has not stated whether it has attempted to subpoena Boswell's cellular service provider.

The Boswell-Constantino Texts are also duplicative of Boswell's deposition testimony and the recorded conversation between Constantino and Saffeels.  Boswell testified that, during the recorded conversation, she was sending text messages to suggest to Constantino what to say, and she would sometimes send Constantino exact words to use.  [Whittaker Decl., Exh. 1

(Boswell Depo.) at 41.]  Boswell identified two specific phrases that Boswell testified Constantino used at Boswell's direction. [Id. at 41-42.]  The use of those phrases can be confirmed through the recording, which the County has a copy of.  This Court therefore finds that the Boswell-Constantino Texts are duplicative of evidence that is already in the possession of the County.

### B.   **Kawano's Alleged Involvement**

The County alleges that, while she was gathering information for her HNN news reports, Kawano was involved in the Golden Ticket Scheme, and she worked with Mr. Green, to develop stories that would advance Plaintiffs' interests in their court cases.  The County argues "Kawano held the story [that became the August 19, 2019 News Report] for weeks and reported it only after Constantino hired Green and then interviewed Green for the story."  [Mem. in Opp. at 9 (citing Whittaker Decl., Ex. 1, Boswell Depo., 31:1-32:3)).]  However, according to Boswell's deposition testimony, it was Boswell who would not allow Kawano to talk to Constantino until Constantino had an attorney.  See Whittaker Decl., Exh. 1 at 31.  The County has presented no evidence which suggests that, while gathering information for her news reports, Kawano assisted Boswell and/or Constantino in the scripting of conversations that could be used as evidence in either the criminal prosecution against Constantino or a civil

action brought by Constantino.  Thus, the County has not shown
that Kawano has any information about her supposed involvement
in the Golden Ticket Scheme.

As to the County's argument that Kawano has relevant
information about her alleged work with Mr. Green to develop
news stories that would advance Plaintiffs' interests, the only
evidence the County has to support this position is: the fact
that Kawano has used interviews with Mr. Green in multiple news
stories; the description of Mr. Green in those news stories as a
"legal expert"; [Mem. in Opp. at 9 n.3;] and Plaintiffs'
testimony that they each hired Mr. Green at Kawano's suggestion.
None of these facts necessarily indicate that Kawano
collaborated with Mr. Green to develop news stories that would
advance Plaintiffs' interests.  Thus, the Count has not shown
that Kawano has any information about the supposed collaboration
between Kawano and Mr. Green.

C.  **Ruling**

The County has shown that Kawano was provided with the
recorded conversation and the text message conversation between
Constantino and Saffeels, and she may have been provided with
the text messages between Boswell and Constantino.  However,
Kawano obtained those items in the course of gathering
information for her news reports, and the County is not entitled

to recover them because it has not satisfied the Shoen II factors.

## II.   **Waiver**

The County next argues that, even if the qualified journalist's privilege would otherwise apply, it has been waived by Kawano because she: provided information to Mr. Green; provided information to the FBI; and suggested to Plaintiffs that they hire Mr. Green.[5]  As one district court within the Ninth Circuit has stated:

> As with other privileges, the First Amendment qualified journalist's privilege may be waived.  See Ayala v. Ayers, 668 F. Supp. 2d 1248, 1250 (S.D. Cal. 2009) (citation omitted). Like the attorney-client privilege, the journalist's privilege is rooted in concepts of fundamental fairness.  See id.; see also Tennenbaum v. Deloitte & Touche, 77 F.3d 337, 340-41 (9th Cir. 1996) ("The doctrine of waiver of the attorney client privilege is rooted in the notions of fundamental fairness.").  As a result, **courts may find that a journalist has impliedly waived the privilege when fairness requires such a finding.**  See Sims v. Blot, 534 F.3d 117, 132 (2d Cir. 2008) ("[W]e have held that a waiver may be implied in circumstances where it is called for in the interests of fairness.") (cited with approval in Ayala, 668 F. Supp. 2d at 1250). Fairness requires such a waiver where a

---

[5] The County argues the issue of waiver should be addressed before the Shoen II factors because, if the qualified journalist's privilege has been waived, "the materials are discoverable as with any other third party that holds relevant information."  [Mem. in Opp. at 13 (citing Ayala v. Ayers, 668 F. Supp. 2d 1248, 1250 (S.D. Cal. 2009)).]  Although this Court has addressed the Shoen II factors first, it notes that its rulings would be the same even if it had addressed the waiver issue first.

> journalist has provided information to one
> litigant but refuses to provide that same
> information to an opposing party.  See Pinkard v.
> Johnson, 118 F.R.D. 517, 523 (M.D. Ala. 1987)
> (finding that a journalist waived his privilege
> when he gave plaintiff's counsel a signed
> affidavit concerning the nature and substance of
> a conversation at issue); see also Ayala, 668 F.
> Supp. 2d at 1250; Sims, 534 F.3d at 132 (implied
> waiver will be found when a privilege is "use[d]
> both as a shield and a sword"); In re von Bulow,
> 828 F.2d 94, 101 (2d Cir. 1987) (a privilege
> holder may not selectively disclose information
> to one litigant and then withhold that same
> information from another).

Michael v. Est. of Kovarbasich, CV 15-00275-MWF (ASx), 2015 WL

8750643, at *4 (C.D. Cal. Dec. 11, 2015) (brackets in Michael)

(emphasis added).

> A.   **FBI Report**

The County asserts Kawano provided to the FBI

information that she obtained while gathering information for

her news reports related to the events giving rise to the

Underlying Cases.  As support for its position that this

constitutes a waiver of the qualified journalist's privilege,

the County cites In re January 11, 2013 Subpoena by Grand Jury

of Union County, 75 A.3d 1260 (N.J. Super. Ct. Law Div. 2013).

See Mem. in Opp. at 13.  In re Jan. 11, 2013 Subpoena is not

persuasive because its privilege analysis was based on New

Jersey state law, not federal common law.[6]  See 75 A.3d at 1263-64 (quoting in N.J. Stat. § 2A:84A-21 and N.J. R. Evid. 508).  Further, the state court ruled that New Jersey case law required a plenary hearing to determine if the "newspaperman's privilege" was properly invoked and if it had been waived, and the person who had invoked the privilege, Tina Renna, "the primary writer and editor of a blog entitled 'The County Watchers[,]'" testified at the hearing.  See id. at 1262-63.  No such procedure is required under federal case law regarding the qualified journalist's privilege.

Under federal law, a waiver of the qualified journalist's privilege will be found if a waiver is required in the interest of fairness.  See Ayala, 668 F. Supp. 2d at 1250.  The only evidence the County has identified to support its position that Kawano reported information to the FBI is Boswell's testimony that, based on her conversations with Kawano, she believed Kawano was working with the FBI.

_____

[6] Jurisdiction in the Underlying Cases is based on federal question jurisdiction over the claims brought pursuant to federal law and supplemental jurisdiction over the state law claims.  See 28 U.S.C. §§ 1331, 1367; Smythe Complaint at ¶ 6; Constantino Complaint at ¶ 5.  Thus, the issue of whether the qualified journalist's privilege applies is determined under federal law.  See In re Suzuki, Civ. No. 14-00516 JMS-KSC, 2014 WL 6908384, at *3 (D. Hawai`i Dec. 5, 2014) ("'[F]ederal law of privilege applies' where, as here, 'there are federal question claims and pendant state law claims.'" (alteration in Suzuki) (quoting Agster v. Maricopa Cnty., 422 F.3d 836, 839 (9th Cir. 2005)) (citing Fed. R. Evid. 501)).

[Whittaker Decl., Exh. 1 (Boswell Depo.) at 50-51.]  Boswell explained that Kawano "must have called somebody.  She must have reached out to see if they were, like, following up on the case or something."  [Id. at 51.]  This is insufficient to show that Kawano disclosed to the FBI information relevant to the events that gave rise to the Underlying Cases.  A more reasonable interpretation of Boswell's testimony is that Kawano contacted the FBI to try to **obtain** information about any pending criminal investigation.  Even if Kawano did disclose some information to the FBI during her inquiry, the County has not shown that the interests of fairness require the disclosure of that information to the County.  Thus, the County has failed to establish that Kawano waived the qualified journalist's privilege by providing information to the FBI.

> B.   **Mr. Green**

Plaintiffs each testified that Kawano either referred her to Mr. Green or referred Mr. Green to her.  See Whittaker Decl., Exh. 2 (Constantino Depo.) at 64, Exh. 3 (Kanno Depo.) at 134, Exh. 4 (Smythe Depo.) at 94.  The County has not identified any evidence that, in making these referrals, Kawano provided information she obtained during the course of her reporting to either Mr. Green or Plaintiffs.

Kawano also interviewed Mr. Green for the August 19, 2019 News Report.  It can be reasonably inferred that, as part

21

of the interview process, Kawano provided him with some
information that she obtained during the course of her news
gathering.  There is no other evidence in the record indicating
that Kawano provided Mr. Green with such information at any
other time.

        Kawano is now invoking the qualified journalist's
privilege to avoid disclosing to the County and this Court what
information she provided to Mr. Green.  See Ayala, 668 F. Supp.
2d at 1250 ("A reporter is not free to give a sworn statement to
a litigant, and later invoke the qualified reporter privilege to
keep this information from the Court." (quotation marks and
citation omitted)).  However, that does not end the waiver
analysis.  The interests of fairness require that a reporter
"not be permitted to disclose information **to advance the
interests of one litigant** and then invoke the journalist's
privilege to prevent discovery of this same information by
another litigant."  See id. (emphasis added) (citing Sims v.
Blot, 534 F.3d 117, 132 (2d Cir. 2008)).  There is no indication
in the record that any information Kawano provided to Mr. Green
in preparation for his interview was provided to advance
Constantino's or any Plaintiff's interest, as opposed to general
information that was also included in the August 19, 2019 News
Report.  The County has not shown that the interests of fairness
require the disclosure to the County of the pre-interview

22

information that Kawano provided to Mr. Green.  Thus, the County has failed to establish that Kawano waived the qualified journalist's privilege by providing information to Mr. Green.

### C.    Ruling

Having considered the record as a whole, this Court concludes that Kawano has not waived the qualified journalist's privilege as to information that she obtained during her news gathering about, or related to, the events giving rise to the Underlying Cases.  To the extent that the County's 11/10 Subpoena seeks to obtain such information, the 11/10 Subpoena is quashed.  See Rule 45(d)(3)(A)(iii).

### III.  Information Not Obtained During News Gathering

The County also seeks information from Kawano that was not obtained while she was gathering information for the August 19, 2019 News Report, _i.e._ - whether there is a referral agreement between Kawano and Mr. Green, and whether Kawano made a citizen's report to the FBI about Saffeels, but not specifically about Plaintiffs.  That information is not protected by the qualified journalist's privilege.  However, this Court finds that there is good cause to issue a protective order forbidding the discovery.  See Fed. R. Civ. P. 26(c)(1)(A).

A protective order is necessary to protect Kawano from annoyance and undue burden because the information is not

relevant to the claims or defenses in the Underlying Cases and Kawano has made a showing of specific harm that will result in the absence of a protective order.  See Foltz, 331 F.3d at 1130. While the subject of a referral agreement and the subject of a citizen's report are not protected by the qualified journalist's privilege, under the circumstances here, those subjects are closely related to other subjects which the County also sought to question Kawano about, but that are protected by the qualified journalist's privilege.  This Court therefore finds that allowing the County to question Kawano about the existence of a referral agreement and about whether she made a citizen's report to the FBI would impair the interests protected by the qualified journalist's privilege - "protecting the integrity of the newsgathering process, and . . . ensuring the free flow of information to the public[.]"  See Shoen I, 5 F.3d at 1292. This impairment would be an annoyance and an undue burden in light of the fact that the information sought is not relevant to the claims and defenses in the Underlying Cases.

Kawano's request for a protective order is therefore granted as to the issue of the existence of a referral agreement with Mr. Green and the issue of whether Kawano made a citizen's report to the FBI about Saffeels.

IV.  **Summary**

   To the extent that the County's 11/10 Subpoena seeks information related to the Underlying Cases that Kawano obtained while gathering information for her news reports, the 11/10 Subpoena is quashed because the information is protected by the qualified journalist's privilege and Kawano has not waived the privilege.  Further, this Court grants a protective order precluding the discovery sought by the 11/10 Subpoena relating to the information sought which was not obtained while Kawano was gathering information for her news reports.  Kawano therefore is not required to respond to any portion of the 11/10 Subpoena.

   In light of these rulings, it is not necessary for this Court to address the other issues raised in the Motion, including, but not limited to, the issue of whether Kawano currently has access to items that she obtained in 2019 while gathering information for her news reports.

<strong><u>CONCLUSION</u></strong>

   For the foregoing reasons, Kawano's Motion for Protective Order and/or to Quash Subpoena, filed November 26, 2022, is HEREBY GRANTED.  There being no remaining issues in this case, the Clerk's Office is DIRECTED to close this case on **February 6, 2023,** unless a timely motion for reconsideration of this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 20, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**IN RE: GRAY MEDIA GROUP INC., DBA KGMB/KHNL AND LYNN KAWANO; MC 22-00592 LEK; ORDER GRANTING GRAY MEDIA GROUP INC. AND LYN KAWANO'S MOTION FOR PROTECTIVE ORDER AND/OR TO QUASH SUBPOENA**